IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRIS NJOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18−cv–0598−SMY |
| ) | |
| J. COE, ) | |
| N. MARSHALL, ) | |
| M. SIDDIQUI, ) | |
| G. WALLS, ) | |
| H. HAWKINS, ) | |
| A. WALTERS, ) | |
| JOHN/AND OR JANE DOES, ) | |
| J. LASHBROOK, ) | |
| J. BALDWIN, and ) | |
| WEXFORD HEALTH SOURCES, INC. ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Chris Njos, an inmate at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He seeks compensatory and punitive damages, as well as a preliminary injunction. (Doc. 4). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

In December 2016, Plaintiff began to experience health issues, which he alleges have been met with deliberate indifference by the staff at Menard. (Doc. 1, p. 5). Specifically, Plaintiff has had a swollen lymph node behind his left ear since December 2016, which has caused him pain, pressure in his neck, lightheadedness, and dizziness. *Id.* He has also consistently experienced high blood pressure. *Id.*

On April 9, 2017, a non-defendant guard, Sgt. Smith, noticed that Plaintiff was dizzy and asked the health care unit to send a wheelchair and admit Plaintiff on an emergency basis. Defendant Jane Doe refused to send a wheelchair because Plaintiff "had been to health care too many times already." (Doc. 1, pp. 5-6). Plaintiff was eventually escorted to the health care unit where he was examined by Defendant Marshall. (Doc. 1, p. 6). Despite reading Plaintiff's blood pressure as 170/100, Marshall, contrary to the health care unit's policy, declined to issue an emergency referral for Plaintiff. *Id*. Plaintiff also told Marshall that his blood pressure

medication was not working; Marshall instructed Plaintiff to "take it easy" and sent him back to his cell house. *Id.*

Plaintiff had a pass to see Defendant Dr. Coe on May 4, 2017, but when he arrived in the health care unit, Coe informed him that his pass should have been cancelled. (Doc. 1, p. 7). Coe conducted a perfunctory exam of Plaintiff's neck and took his blood pressure. *Id.* Coe told Plaintiff there would be a follow-up visit the following week, but he never followed up with Plaintiff. *Id.*

Plaintiff saw Marshall again on May 13, 2017. *Id.* Marshall put Plaintiff on the doctor's call list, but despite multiple sick call slips, Plaintiff did not see Coe again until May 26, 2017. (Doc. 1, pp. 7-8). Plaintiff alleges that John/Jane Does did not "do their jobs" in refusing to process Plaintiff's sick call slips. (Doc. 1, p. 7).

During the May 26, 2017 visit with Dr. Coe (which was Plaintiff's annual physical), Plaintiff tried to raise his swollen lymph node and blood pressure issues, but Dr. Coe refused to discuss them. He told Plaintiff "this place is going to shit" and that he planned on leaving soon. (Doc. 1, p. 8).

On June 8, 2017, Plaintiff was escorted to the health care unit again, where Coe refused to listen to him, painfully squeezed his swollen neck, and made his ear bleed. (Doc. 1, p. 9). Coe diagnosed an ear infection. When Plaintiff complained that it had taken 6 months to get a diagnosis, Coe screamed, "You have aids! We're done!" *Id.*

Two days later, Plaintiff suffered what he believed to be a seizure, and was taken to the health care unit with high blood pressure. (Doc. 1, pp. 9-10). He was placed on a 24-hour hold, but Defendant Walters released him back to general population to make room, despite the fact that the 24 hours had not elapsed. (Doc. 1, p. 10). Walters told Plaintiff that a doctor would

check on him right away, but no one came. (Doc. 1, pp. 10-11). A med tech referred Plaintiff to the doctor the next day on June 11, 2017. (Doc. 1, p. 11).

Plaintiff saw Defendant Dr. Siddiqui on June 14, 2017. *Id*. He recommended a CT scan on Plaintiff's neck and a neurology evaluation. *Id*. The CT scan was performed on July 18, 2017. *Id*.

Plaintiff did not have a follow-up visit to discuss the results of the CT scan until August 13, 2017. (Doc. 1, p. 12). Dr. Siddiqui told Plaintiff that there was nothing wrong with him, but Plaintiff pointed out that the CT scan showed 1) lesions on his major salivary glands, 2) mild bilateral maxillary sinus disease; and 3) mild scoliosis of the cervical spine. *Id*. Dr. Siddiqui was dismissive, but approved a neurology consultation. *Id*.

Plaintiff saw a neurologist on August 22, 2017, but because the prison failed to send Plaintiff's medical records with him, including the recent CT scan, the neurologist was unable to make any recommendations. (Doc. 1, pp. 12-13). Plaintiff did not receive a follow up from any Menard health care staff after he returned from the neurologist. (Doc. 1, p. 13). Plaintiff's mother called the prison and was told that he was not scheduled for a follow-up because prison staff had not received any recommendations from the neurologist. *Id*. Plaintiff met with Dr. Siddiqui on September 22, 2017, who also stated that he had not received any recommendations from the neurologist. *Id*. Plaintiff then pointed out that the neurologist could not make recommendations because prison staff had not provided her with Plaintiff's medical records. (Doc. 1, pp. 13-14).

Marshall noted Plaintiff's elevated blood pressure again on October 10, 2017, but had no update on the neurologist recommendations. (Doc. 1, p. 14). Finally, Plaintiff was informed on October 18, 2017 that the neurologist had recommended physical therapy, muscle relaxers, and

4

an MRI. *Id*. Although Dr. Siddiqui scheduled the MRI recommended by the neurologist, he declined Plaintiff's request for an additional MRI of his shoulder, which had also grown painful. (Doc. 1, p. 15). Dr. Siddiqui also failed to schedule a follow-up appointment with the neurologist, and although the neurologist prescribed Flexiril, Dr. Siddiqui substituted a less effective medication. (Doc. 1, pp. 15-16).

Plaintiff received an MRI of his cervical spine on November 27, 2017. (Doc. 1, p. 16). It showed disc desiccation with multilevel annular fissures, and stenosis. *Id*. Plaintiff alleges that his pain has increased and spread during the months that he has repeatedly sought medical treatment, and that the pain medication prescribed by prison staff has been ineffective. *Id*.

Plaintiff alleges that Wexford Health Sources Inc. has a policy or practice of delaying and preventing medical care by promoting conservative and ineffective treatment plans. (Doc. 1, p. 17). He also alleges that Wexford has a policy of delaying or denying prisoners access to off-site specialists. *Id.* Finally, Plaintiff asserts that Wexford has a policy of failing to adequately supervise its employees. (Doc. 1, p. 18).

Plaintiff alleges that Defendants Lashbrook and Baldwin were aware of the deliberate indifference of others through the grievance process, and approved, condoned, or turned a blind eye to the conduct. (Doc. 1, pp. 19-20).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide this pro se action into 3 Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

**Count 1** – Coe, Marshall, Siddiqui, Walls, Hawkins, Walters, John and/or Jane Does, Lashbrook, and Baldwin were deliberately indifferent to Plaintiff's neck pain and high blood pressure in violation of the Eighth Amendment;

**Count 2** – Wexford Health Sources had a policy of delaying and denying inmates medical care in violation of the Eighth Amendment.

Plaintiff has attempted to bring another count, but for the reasons explained below, Plaintiff shall not be permitted to proceed on the following claim:

**Count 3** – Coe, Marshall, Siddiqui, Walls, Hawkins, Waters, John and/or Jane Does, Lashbrook, and Baldwin intentionally inflicted emotional distress upon Plaintiff in violation of Illinois state law.

### Count 1

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state such a claim, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th

Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give inmates the right to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Plaintiff has alleged that many of the defendants directly involved in his medical care were deliberately indifferent to his serious medical needs. Without question, persistent or chronic neck pain and high blood pressure, alone or in combination, can be objectively serious medical conditions. Plaintiff has alleged that Defendants Dr. Coe, Marshall, and Dr. Siddiqui all undertook to treat him for these conditions, but did so in a manner that evinced deliberate indifference. Specifically, Plaintiff alleges that Dr. Coe refused to discuss Plaintiff's medical issues during a routine examination, then performed a needlessly rough exam, and screamed at Plaintiff, and that his actions resulted in a delay in diagnosing Plaintiff's conditions. Plaintiff also alleges that Dr. Coe never took steps to resolve his pain or high blood pressure. Likewise, he alleges that Marshall, despite being aware of Plaintiff's high blood pressure, repeatedly refused to take any action. Plaintiff alleges that Dr. Siddiqui was also deliberately indifferent in that, although he referred Plaintiff to a specialist, he failed to ensure that the specialist had the medical records necessary to make a considered recommendation, set timely follow-up appointments, or follow recommendations.

Plaintiff alleges that other defendants' administrative decisions showed insufficient concern for his condition as well. Defendant Walters allegedly released Plaintiff from the

infirmary for non-medical reasons when he was still in need of treatment. Finally, Plaintiff alleges that Defendants Lashbrook and Baldwin approved, condoned, or turned a blind eye to Plaintiff's inadequate medical treatment.

All in all, Plaintiff alleges that he was made to wait months for a diagnosis, and that his symptoms remain poorly controlled. Plaintiff sufficiently alleges that the defendants did not take appropriate action when confronted with his persistent symptoms. Thus, his deliberate indifference claim against Dr. Coe, Marshall, Walters, Dr. Siddiqui, Lashbrook, and Baldwin shall proceed.

Plaintiff has also named Walls and Hawkins as defendants on his deliberate indifference claim. His statement of claim against Walls reads, "Walls failed in her duties to assess and ensure the health care needs of the Plaintiff and in her duties that pertains to the supervision of the nursing staff." (Doc. 1, p. 18). Likewise, Plaintiff alleges that "Defendant Hawkins failed in her duties and responsibilities by not ensuring Plaintiff received adequate medical treatment and care." (Doc. 1, p. 19). However, Plaintiff does not allege that he saw either Walls or Hawkins personally for medical treatment, or that they were otherwise involved in his treatment.

Plaintiff's attempt to hold Walls and Hawkins liable for failure to adequately supervise personnel fails. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-

56 (7th Cir. 1981). Because Walls and Hawkins were not personally involved in the alleged violations, they will be dismissed from Count 1 with prejudice.

Plaintiff has also named several John/Jane Doe defendants, but these individuals must also be dismissed at this time. Plaintiff alleges that Jane Doe refused to send a wheelchair to his unit to pick him up on April 9, 2017. But an officer eventually escorted him to the health care unit that same day. Section 1983 is a tort statute, so plaintiff must have suffered a harm to have a cognizable claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997). Plaintiff has not alleged that he was harmed by Jane Doe's refusal to send a wheelchair. Therefore, Jane Doe will be dismissed from Count 1 without prejudice.

Next, Plaintiff asserts that John/Jane Does failed to process his sick call slips, but does not allege facts from which it could be reasonably inferred that these unknown defendants had a culpable state of mind. Additionally, while a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of medical providers violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). While Plaintiff may not know the name of individual defendants, he must describe the "who, what, why, where, and how" that form the basis of the claim against each person. For these reasons, the John/Jane Doe defendants who allegedly failed to process sick call slips will be dismissed without prejudice.

**Count 2**

Plaintiff has also sued Wexford on the basis of an unconstitutional policy or practice. Normally, a private corporation is shielded from vicarious liability under § 1983. However,

Wexford is presumed to act under color of state law, and is thus treated as though it were a municipal entity. *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002). In that vein, to state a claim against a municipality, a plaintiff must demonstrate that the wrongdoers acted pursuant to an unconstitutional policy or custom, *Whiting v. Wexford Health Sources*, *Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *Shields v. Ill Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 780 & n. 5 (7th Cir. 2015), and that the policy was the moving force behind the constitutional violation. *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Here Plaintiff alleges that his medical care was delayed due to Wexford's policy or practice of preferring less effective treatment over specialist referrals. He also alleges that Wexford has a policy or practice of refusing to adequately supervise its employees. At this juncture, it is plausible that either of those policies or both in combination could have contributed to the harms alleged by Plaintiff. As such, Plaintiff has adequately stated a *Monell* claim against Wexford, and he will be permitted to proceed on Count 2.

**Count 3**

Plaintiff attempts to bring a state-law claim for intentional infliction of emotional distress ("IIED") in Count 3. Under Illinois law, a plaintiff claiming IIED must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must

in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E. 2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged by an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

It is clear, however, that "the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath*, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. *See Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 211 (1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (1993). Thus, to serve as a basis for recovery, the defendant's conduct must be such that the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] Outrageous!" *Doe v. Calumet City,* 641 N.E.2d 498, 507 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted).

Plaintiff alleges the defendants subjected him to the intentional infliction of emotional distress *because* they were deliberately indifferent to his medical needs. (Doc. 1, p. 21). However, an IIED claim has different elements than a deliberate indifference claim, and Plaintiff has not adequately pleaded the requisite elements of the claim. Plaintiff has not pleaded facts indicating that the conduct involved was extreme and outrageous. He alleges that his medical appointments were delayed and the diagnosis of his conditions deferred, but that conduct does

not meet the standard for an IIED claim. *See Lopez v. City of Chicago*, 464 F.3d 711, 720-21 (7th Cir. 2006) (detainee had viable IIED claim where he alleged that he was chained to a wall for 4 days and only received food and drink once during that time period); *Honaker v. Smith*, 256 F.3d 477, 492-93 (7th Cir. 2001) (setting a fire to burn someone's house down would constitute "extreme and outrageous" conduct); *Williams v. Erickson*, 962 F.Supp.2d 1038, 1043 (N.D. Ill. 2013) (inmate stated viable IIED claim where he alleged that nurse failed to assist him in changing his colostomy bag, causing him to lay in his own feces for 4 hours). Moreover, Plaintiff does not allege the defendants intended to inflict severe emotional distress or that he actually suffered from *severe* emotional distress. For these reasons, Plaintiff has failed to state colorable IIED claim, and **Count 3** will be dismissed without prejudice.

## Pending Motions

Plaintiff's Motion for Recruitment of Counsel and Motion for Preliminary Injunction and Memorandum of Law shall be referred to United States Magistrate Judge Reona J. Daly for prompt disposition. (Doc. 3) (Doc. 4).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1 and 2** survive threshold review against Coe, Marshall, Siddiqui, Walters, Lashbrook, Baldwin, and Wexford. Walls and Hawkins are **DISMISSED** from this suit **with prejudice**, to the extent that Plaintiff is attempting to make them liable based on their supervisory positions. The John/Jane Doe defendants are **DISMISSED without prejudice** for failure to state a claim. **Count 3** is **DISMISSED without prejudice** for failure to state a claim.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Coe, Marshall, Siddiqui, Walters, Lashbrook, Baldwin, and Wexford: (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the

full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 12, 2018**

    s/ STACI M. YANDLE
**U.S. District Judge**