# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRIS NJOS,                         )

                              )

          **Plaintiff,**          )

                              )

vs.                           )     **Case No. 18-CV-598-SMY-RJD**

                              )

**J. COE, N. MARSHALL, M. SIDDIQUI,**  )

**A. WALTERS, JACQUELINE**       )

**LASHBROOK, J. BALDWIN, and**    )

**WEXFORD HEALTH SOURCES, INC.,**  )

                              )

          **Defendants.**        )

## MEMORANDUM AND ORDER

**YANDLE, District Judge**

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly, recommending that Plaintiff's Motion for Preliminary Injunction (Doc. 4) be denied (Doc. 40). Plaintiff filed a timely objection (Doc. 41) to which Defendants responded (Doc. 42). For the following reasons, the Court **ADOPTS** Judge Daly's Report.

### Procedural Background

Plaintiff Chris Njos, an inmate currently incarcerated at Menard Correctional Center ("Menard"), filed a Complaint on March 22, 2018, alleging he was not receiving adequate medical care since December 2016 (Doc. 1). His Complaint detailed his medical condition which included a swollen and painful lymph node behind his left ear, uncontrolled high blood pressure, and a painful shoulder. According to the Complaint, Plaintiff encountered a number of medical personnel during the relevant time period, underwent a CT scan of his neck and an MRI of his cervical spine, and saw a neurologist, but none of these encounters resulted in meaningful medical

care. He is proceeding on two Counts: a deliberate indifference claim against the individual defendants as to his neck pain and high blood pressure; and a policy and practice claim against Defendant Wexford Health Sources (Doc. 7). In addition to the Complaint, Plaintiff filed a Motion for Preliminary Injunctive relief (Doc. 4). That motion was referred to Judge Daly who conducted a hearing on September 12, 2018.

Judge Daly considered the evidence including Plaintiff's testimony, medical records, Dr. Mohammed Siddiqui's affidavit, and the testimony of Nurse Practitioner Christine Lindsay, and concluded that Plaintiff had neither shown irreparable harm nor a likelihood of success on the merits (Doc. 40). Specifically, Judge Daly made the following findings: Plaintiff's shoulder condition is preexisting from an injury that occurred in 2009. X-rays conducted on June 29, 2016 and October 25, 2017 revealed that Plaintiff had a "ununited fracture" of the clavicle for which Plaintiff was prescribed physical therapy. Plaintiff's neck and sinuses also were x-rayed on January 25, 2017 and revealed minimal clouding of the bone at the root of his nose, no air/fluid in his paranasal sinuses, and no bony expansion or destruction. An x-ray of his cervical spine on April 12, 2017 revealed unremarkable findings and a follow-up CT scan on July 18, 2017 revealed no abnormalities.

Thereafter, Plaintiff was referred to a neurologist, Dr. Lori Guyton, who examined him on August 22, 2017. Dr. Guyton recommended an MRI of his cervical spine, a Flexeril prescription, and physical therapy. The MRI was taken on November 27, 2017 and revealed moderate stenosis at the C7-T1 level but not elsewhere in the cervical spine. While Plaintiff was then approved for follow-up, an appointment was made a number of months later, on July 26, 2018, after this lawsuit was filed.

The follow-up was conducted by another neurologist, Dr. Loftspring, who did a full neurological examination. The examination was normal, but Dr. Loftspring noted that Plaintiff's left arm issues may be related to the nonunion clavicle facture. Dr. Loftspring recommended physical therapy and referral to an orthopedic specialist. After the hearing, Plaintiff was examined by an orthopedist, Dr. Sinha, and continues to receive medical care at Menard, including pain medication and diagnostic testing.

Based on these factual findings, Judge Daly concluded that while Plaintiff is suffering from serious medical conditions, he is receiving adequate medical care.

## Discussion

Since Njos filed a timely objection, the undersigned must undertake a *de novo* review of Judge Daly's recommendation to deny his motion for preliminary injunction. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers,* 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Id.* The Court has reviewed Judge Daly's Report consistent with these standards.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). In order to obtain a preliminary injunction, a plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction.

*Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012), *citing Am. Civil Liberties Unions of Ill. v. Alvarez,* 679 F.3d 583, 589-90 (7th Cir. 2012).

In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer,* 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

Plaintiff has not shown irreparable harm such that the extraordinary relief of a preliminary injunction should be granted. Plaintiff first generally objects to Judge Daly's "minimization" of his pain and suffering. In the Report, however, Judge Daly recognized that Plaintiff had serious medical conditions that required treatment and that he was in fact being treated. The Constitution does not require prison physician to immediately prescribe the most potent pain medication upon an inmate's complaints of pain. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). Plaintiff has serious medical conditions that require treatment, which he is receiving, but he is not entitled to a pain free existence while incarcerated.

Plaintiff next argues that Judge Daly should not have relied on Dr. Siddiqui's affidavit as it contains lies in an attempt to mislead the Court, especially as to his recitation of Dr. Guyton's

findings. Dr. Siddiqui's affidavit was filed along with Defendants' response to Plaintiff's motion for injunctive relief (Doc. 31-1). Judge Daly did cite to Dr. Siddiqui's affidavit in the Report, but she also referred to the medical records themselves in describing Dr. Guyton's recommendations and the results of the CT scan and MRI. Thus, even if Dr. Siddiqui erred in representing the medical evidence, such a misrepresentation did not factor into Judge Daly's calculus.

Plaintiff further argues that the delay in receiving a follow up appointment with Dr. Guyton and the subsequent appointment with Dr. Loftspring unnecessarily exacerbated his condition and prolonged his pain. But, Plaintiff is not entitled to demand specific care – in this case, a follow up appointment with a particular neurologist. *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). Moreover, while a delay in treatment can demonstrate deliberate indifference, not every delay violates the constitution. *See Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Finally, Plaintiff asserts that while he receives blood pressure medication, he has had "multiple episode" of high blood pressure. He further asserts that his nerve pain/pain medication has been "stopped at times" for non-medical reasons since the preliminary injunction hearing, and that his muscle relaxer has been discontinued for 2 weeks since the hearing. These assertions, however, are not properly before the Court as objections to the Report. That said, the Court notes that Plaintiff is enrolled in the hyper-tension clinic and has identified no harm suffered as a result of his alleged sporadic elevated blood pressure.

Plaintiff has received and continues to receive medical care with respect to his medical conditions. His disagreements with treatment decisions or the alacrity with which evaluations and diagnostic tests are accomplished cannot support a deliberate indifference claim and do not demand immediate injunctive relief. *Edwards v Snyder*, 478 F.3d 827, 831 (7th Cir. 2007).

Based on the record and relevant legal authority, this Court agrees with Judge Daly's conclusion that Plaintiff is receiving medical care for his neck and shoulder condition and has not shown irreparable harm or the need for immediate injunctive relief, and **ADOPTS** her Report and Recommendation in its entirety (Doc. 40). Accordingly, Plaintiff's Motion for Preliminary Injunction (Doc. 4) is **DENIED.**

**IT IS SO ORDERED.**

**DATED: March 25, 2019**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**United States District Judge**